### INDIANA BOARD OF PHARMACY v. HAAG.

[No. 22,983.   Filed January 26, 1916.]

1. CONSTITUTIONAL LAW.—*Druggists.*—*Licenses.*—*Revocation.*—Section 9735c Burns 1914, Acts 1911 p. 443, §3, providing that the Indiana Board of Pharmacy may refuse to grant a certificate to any pharmacist guilty of a felony or gross immorality, and may revoke the certificate of any druggist who shall be guilty of such acts, is a valid exercise of the police power and infringes no constitutional provision.   p. 336.

2. DRUGGISTS.—*Revocation of Licenses.*—*Gross Immorality.*—Gross immorality is sufficient cause for the revocation of a druggist's license when the statute so provides.   p. 337.

3. DRUGGISTS.—*Revocation of Licenses.*—*Unlawful Sale of Liquors.*—*Gross Immorality.*—The habitual sale of intoxicating liquor in violation of law constitutes gross immorality within the meaning of §9735c Burns 1914, Acts 1911 p. 443, §3, authorizing the revocation of druggists' licenses for gross immorality, since "immorality" is that which contravenes the divine command, or social duties,

or which is hostile to the welfare of the general public,while "gross," in that connection means wilful, flagrant, or shameless, rather than great or excessive. p. 337.

4. DRUGGISTS.—*Revocation of Licenses.—Statutes.—Gross Immorality.*—Section 9735c Burns 1914, Acts 1911 p. 443, §3, authorizing the revocation of druggists' licenses for gross immorality, is not objectionable on the theory that the words "gross immorality" are too indefinite, uncertain and vague, and fix no standard for determining the moral qualifications of the licensee, and charges that a druggist was guilty of gross immorality in that he made unlawful sales of liquor, and used his license as a pharmacist to help maintain and operate a place for the illegal sale of intoxicating liquor, etc., were sufficient on which to base a revocation of his license. p. 338.

From Marion Circuit Court (20,673); *Charles Remster*, Judge.

Proceeding by the Indiana Board of Pharmacy to revoke the license of Julius A. Haag to practice pharmacy. From a judgment for the defendant, this appeal is prosecuted. (Transferred from the Appellate Court under §1397 Burns 1914, Acts 1901 p. 565, §13.) *Reversed.*

*Thomas M. Honan, Frank P. Baker* and *Gavin & Gavin*, for appellant.

. *Ryan, Ruckleshaus & Ryan*, for appellee. ·

ERWIN, J.—On September 14, 1911, charges were filed before appellant seeking the revocation of a license to practice pharmacy, theretofore issued to appellee. Such proceedings were had before appellant as that the license or certificate of appellee was ordered revoked. This proceeding was under §3 Acts 1911 p. 443, §9735c Burns 1914. From this order annulling the license, appellee appealed to the circuit court of Marion County. In that court appellee moved to require appellant to make its charges more specific, which was done by setting

forth therein the particular acts constituting gross immorality.

The charges on which appellant claims the right to revoke the license of appellee are that he, appellee, was guilty of gross immorality in connection with the conduct of his business and in substance were, that he sold liquor unlawfully in quantities less than a quart at a time and without a prescription from a physician; that he had no license from the board of commissioners or from any other authority so to do; that he used his license as a pharmacist to help maintain and operate a place which he did maintain, where liquors were sold in violation of law, specifying in many particulars the days and dates and to whom sales were made. To these amended charges appellee filed a demurrer for want of facts to constitute sufficient charges of gross immorality. This demurrer was sustained by the circuit court and appeal is prosecuted here. It is contended by appellee as set out in the specifications to his demurrer, (a) that the charges are not specifically stated, but are in the nature of conclusions; (b) that the facts pleaded do not constitute gross immorality; (c) that the power given to appellant to revoke a certificate for gross immorality does not authorize appellant to revoke such certificate of registration on account of the unlawful sales of intoxicating liquor by the holder; (d) that such power does not authorize the revocation of such certificate because of the commission of misdemeanors punishable by the laws of the State; (e) that appellant has no authority to revoke the certificate on the grounds of gross immorality for the reason that the phrase "gross immorality" is vague, indefinite and uncertain and fixes no standard for determining the moral qualifications of the person to be entrusted with a certificate as a pharmacist;

(f) that §3 of the act, *supra*, under which this proceeding was brought is unconstitutional and void as being in conflict with §23, Art. 1 of the Constitution of this State.

The provisions of the statute under consideration are in all respects identical with the provisions of the statute in relation to the revocation of a license to practice medicine. §8405 Burns 1914, Acts 1901 p. 475. Said act in relation to the revocation of a license to practice medicine reads as follows: "The board may refuse to grant a certificate to any person guilty of a felony or gross immorality  *  *  * . If any person holding a license under the provision of this act shall be guilty of any of the above enumerated acts  *  *  *. said board may, after notice and hearing, revoke any license which has heretofore been or may hereafter be issued to him." In the case of *Spurgeon* v. *Rhodes* (1906), 167 Ind. 1, 78 N. E. 228, this court had under consideration the validity of the statute last above referred to and held the same was a "valid exercise of the police power of the State infringing no provisions of either Federal or State Constitutions," citing numerous authorities on page 11. Our attention has been called to decisions of this and other states upon this subject, as follows: *Hedderich* v. *State* (1885), 101 Ind. 564, 51 Am. Rep. 768; *Wilkins* v. *State* (1888), 113 Ind. 514, 16 N. E. 192; *State, ex rel.* v. *Webster* (1898), 150 Ind. 607, 50 N. E. 750, 41 L. R. A. 212; *In re Coffin* (1899), 152 Ind. 439, 53 N. E. 458; *Hawker* v. *State* (1898), 170 U. S. 189, 18 Sup. Ct. 573, 42 L. Ed. 1002; 30 Cyc 1559; *State* v. *Hovorka* (1907), 100 Minn. 249, 110 N. W. 870, 8 L. R. A. (N. S.) 1272, 10 Ann. Cas. 398; *Kentucky Board, etc.* v. *Cassidy* (1903), 115 Ky. 690, 74 S. W. 730; *State Board, etc.* v. *Matthews* (1910), 197 N. Y. 353, 90 N. E. 966, 26 L. R. A. (N. S.) 1013; *State* v. *Evans*

(1907), 130 Wis. 381, 110 N. W. 241; *Bertram* v.
*Commonwealth.* (1908), 108 Va. 902, 62 S. E. 969;
*State* v. *Hamlett* (1908), 212 Mo. 80, 110 S. W. 1082;
*Minneapolis Pharmaceutical Assn.* v. *State Board,
etc.* (1911), 103 Minn. 21, 114 N. W. 245; *Alcorn
Cotton Oil Co.* v. *State* (1911), 100 Miss. 299, 56
South. 397, 40 L. R. A. (N. S.) 875; *Klafter* v.
*State Board, etc.* (1913), 259 Ill. 15, 102 N. E. 193, 46
L. R. A. (N. S.) 532, Ann. Cas. 1914 (B) 1221.

2.   Gross immorality is a sufficient cause for re-
vocation when the statutes so provide. *Spur-
geon* v. *Rhodes, supra;* *State, ex rel.* v. *Web-
ster, supra; In re Coffin, supra; Meffert* v. *Medical
Board, etc.* (1903), 66 Kan. 710, 72 Pac. 247, 1
L. R. A. (N. S.) 811; *Moore* v. *Strickling* (1899), 46
W. Va. 515, 33 S. E. 274, 50 L. R. A. 279; *State, ex
rel.* v. *Matthews* (1908), 81 S. C. 414, 62 S. E. 695,
128 Am. St. 919, 22 L. R. A. (N. S.) 735, 16 Ann.
Cas. 182; *Klafter* v. *State Board, etc., supra; Richard-
son* v. *Simpson* (1913), 88 Kan. 684, 129 Pac. 1128,
43 L. R. A. (N. S.) 911; *Aiton* v. *Board, etc.* (1911),
13 Ariz. 354, 114 Pac. 962, L. R. A. 1915 A 691; *In
re Stinson* (1911), 22 Ont. L. Rep. 627; *People* v.
*Apfelbaum* (1911), 251 Ill. 18, 95 N. E. 995; *State,
ex rel.* v. *Goodier* (1905), 195 Mo. 551, 93 S. W. 928;
*Katzman* v. *Commonwealth* (1910), 140 Ky. 124, 130
S. W. 990, 140 Am. St. 359, 30 L. R. A. (N. S.) 519.

The question now presented is, Does the habitual
sale of intoxicating liquors contrary to law con-
stitute "gross immorality" within the mean-
3.   ing of the statute authorizing the revocation
of a pharmacist's license. It has been so
held in the following cases. *Hildreth* v. *Crawford*
(1884), 65 Iowa 339, 21 N. W. 667; *Munkley* v.
*Hoyt* (1901), 179 Mass. 108, 60 N. E. 413; *State,
ex. rel.* v. *Goodier, supra.*

Vol. 184—21

Immorality as defined by Webster is "The quality of being immoral"; "an immoral act or practice." Immoral is defined by the same authority as "Not moral"; "inconsistent with rectitude"; "contrary to conscience or the divine law"; "wicked", "unjust"; "dishonest"; "vicious". Immorality as defined by lawwriters is "That which is *contra bonas mores*"; "an act or practice which contravenes the divine command or social duties". Immoral, as that which is "Hostile to the welfare of the general public"; "wicked"; "unjust"; "dishonest"; "vicious"; "unjust in practice". 21 Cyc 1736; *Jones* v. *Dannenberg Co.* (1900), 112 Ga. 426, 430, 37 S. E. 729, 52 L. R. A. 271. "Gross" as used to modify the word "immorality" does not mean great or excessive, but rather wilful, flagrant, or shameless, showing a moral indifference to the opinions of the good and respectable members of the community. *Moore* v. *Strickling, supra;* 4 Words and Phrases 3167.

It is next insisted by appellee that the words "gross immorality" are too indefinite, uncertain and vague and fix no standard for determining the moral qualifications of the person to be entrusted with a license. The case of *Moore* v. *Strickling, supra,* was an action to remove an officer for "gross immorality." The court says "For the question of gross immorality must be determined according to the common understanding of the ordinary law-abiding and reasonable citizens of the country and not according to those who are highly developed ethically, or those, on the other hand, who are suffering from moral depravity. The word 'gross' as used in this connection, does not mean 'great and excessive', but rather wilful, flagrant, or shameful, showing a moral indifference to the opinions of the good and respectable members of the community and to the just obligations of the

position held by the delinquent." In *Meffert* v. *Medical Board, etc., supra,* under a statute exactly identical with ours, a license was revoked on the grounds of immorality. This action was sustained by the supreme court of Kansas and affirmed by the United States Supreme Court. In *People* v. *Apfelbaum, supra,* the statute is held to be sufficiently certain which named as causes for revocation certain specific reasons and also for "unprofessional and dishonorable conduct". The court says, "The reasons particularly named are certain enough, but it would scarcely be possible for the statute to catalogue specifically every act of unprofessional or dishonorable conduct which would justify the refusal, or revocation of a license." *State, ex rel.* v. *Goodier, supra,* held a statute valid which provided for the revocation of a license when one is guilty of dishonorable conduct. *Richardson* v. *Simpson, supra,* had under consideration the revocation of a dentist's license for "dishonorable conduct". The court sustained the statute and says: "We think it is going entirely too far to say that such a provision is a nullity. * * * The phrase is general, but no great practical difficulty attends its application." In *Aiton* v. *Board, etc., supra,* the same objection was offered as is here interposed to the phrase "unprofessional conduct". The court there held, "We think it should be held to mean that which is by general opinion considered to be grossly unprofessional because immoral or dishonorable." In *Meffert* v. *Medical Board, etc., supra,* a statute was upheld which provided for the revocation of a physician's license for gross immorality. That statute did not define what shall be considered gross immorality. In *Klafter* v. *State Board, etc., supra,* 22, it was held that gross incompetency or recklessness in the construction of buildings was "some act or conduct that in the common judgment would be considered

grossly incompetent or reckless". Saying further, "It is a practicable impossibility to set out in a statute in detail every act which would justify revocation of a license. The requirements of the statute can only be stated in general terms and reasonable discretion reposed in the officials charged with its enforcement. The statute in question is not void for uncertainty." Grounds commonly designated by statute upon which a medical board is authorized to revoke a physician's license, are "unprofessional, dishonorable or immoral conduct". 30 Cyc 1557-1559.

For the sake of the demurrer it is admitted by appellee that for the year immediately preceding the filing of the charges, he had, every day, sold liquor in less quantities than a quart at a time, without a license from the board of commissioners, or from any other authority, so to do; that the same was sold without a prescription from a reputable physician on the application of the purchaser. It has been held by this court that the violation of a criminal law by the applicant for a license to sell liquor, may be shown as an act of immorality to defeat his application. *Groscop* v. *Rainier* (1887), 111 Ind. 361, 12 N. E. 694; *Bronson* v. *Dunn* (1890), 124 Ind. 252, 24 N. E. 749; *Hardesty* v. *Hine* (1893), 135 Ind. 72, 34 N. E. 701.

We are of the opinion that the charges are sufficiently definite and certain, and that the trial court erred in sustaining the demurrer thereto. Judgment is reversed with instructions to the court below to overrule the demurrer.

NOTE.—Reported in 111 N. E. 178. As to druggists' licenses, see 129 Am. St. 294. On immorality as ground for revoking physician's license, see 30 L. R. A. (N. S.) 783; 43 L. R. A. (N. S.) 912; 51 L. R. A. (N. S.) 958. As to the validity of statutory regulation of druggists or pharmacists, see 10 Ann. Cas. 399. See, also, under (1) 14 Cyc 1079, 1081; (2) 14 Cyc 1081; (3) 14 Cyc 1081; 21 Cyc 1736.